FILED

2011 Jun-20  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RUBY LE GRO,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **CASE NO. 2:09-cv-1154-SLB** |
| | } | |
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |

## <u>MEMORANDUM OPINION</u>

The case is currently before the court on defendant United States of America's ("United States") Motion for Summary Judgment.  (Doc. 33).[1]  In her Complaint, plaintiff asserts claims for personal injury against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, et. seq.  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motion for Summary Judgment filed by the United States is due to be granted.

## I.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1]  Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

1

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d

604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once

the moving party has met its burden, the non-moving party must go beyond the pleadings and

show that there is a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by:

> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("[I]t is never enough simply to state

that the non-moving party cannot meet its burden at trial.").

In deciding a motion for summary judgment, the court's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial."  *Anderson*, 477 U.S. at 249.  "[C]ourts are required to view the facts and draw

reasonable inferences 'in the light most favorable to the party opposing the [summary

judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v.*

2

*Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, the non-moving party

"need not be given the benefit of every inference but only of every reasonable inference."

*Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v.

City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)).

## II.  FACTUAL AND PROCEDURAL HISTORY[2]

This case arises from a personal injury sustained at a United States Post Office and

is brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80.  Plaintiff Ruby Le Gro

was injured while at the post office located at 351 24th Street North in Birmingham,

Alabama on December 2, 2006 at approximately 9:00 a.m.  (Doc. 1 ¶ 8, Compl.; Doc. 35-2

at 33, Le Gro Depo.)  Ms. Le Gro, a former truck driver, was at the postal facility to deliver

fillers for newspapers when she suffered an un-witnessed fall on a speed bump in the post

office parking lot.  (Doc. 35-2 at 10, 11, 16, 24, 32-33, 42, Le Gro Depo.)  She claims that

the government "had a duty to either correct the danger the curb presented or to warn its

patrons, such as Plaintiff, of the danger presented by the curb," and that defendant breached

this duty "by not removing the hazard created by the curb and/or by failing to warn the

Plaintiff and other patrons of the hazard created by the curb prior to the Plaintiff's accident."

 (Doc. 1 ¶¶ 15-16, Compl.)

---

[2]As required when evaluating a motion for summary judgment, the court states the facts and all reasonable inferences arising from them in the light most favorable to plaintiff, the nonmoving party.  *See, e.g., Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citations omitted)).

On the morning of December 2, 2006, Le Gro arrived at the post office, parked her eighteen-wheeler truck in the post office parking lot, exited her truck, and started trying to locate someone at the postal facility to ask for information about parking. (Doc. 35-2 at 9, 31-33, Le Gro Depo.)  Le Gro first walked to the guard shack in the parking lot, but no one was there. (*Id.* at 32-33.)  Le Gro then left the guard shack with the intention of going to the nearest post office entrance to find someone. (*Id.* at 33.)  The subject speed bump was close to the post office building. (*Id.*)

The United States Postal Service ("Postal Service") owns the property where Le Gro fell and is responsible for maintaining the premises and the building. (Doc. 39-11 at 74-75, Wilson Depo.)  Sometime around the mid to late 1990's, the Postal Service installed the subject speed bump on the post office's premises. (Doc. 39-10 at 60, Wilson Depo.)  The speed bump was the type that is bolted into the ground, (Doc. 42-3 at 38, Davis Depo.), which is installed by placing anchor-type devices in the pavement and then screwing the speed bump down into the anchor. (Doc. 39-11 at 61-62, Wilson Depo.)  The speed bump was to be bolted so that it would stay firm to the ground. (Doc. 39-10 at 57, Wilson Depo.; Doc. 42-3 at 39, Davis Depo.)

According to Le Gro, the speed bump on which she tripped was not completely attached to the ground on the day of her accident. (Doc. 35-2 at 55-56, Le Gro Depo.)  The speed bump was raised about an inch on one end, just enough so that one could poke a couple fingers under it. (Doc. 40-2 at 10-11, Cranford Depo.; Doc. 40-6 at 16-17, Price Depo.)  The

speed bump was yellow and it lay in a parking lot that was paved a black color.  (Doc. 39-13 at 107, Wilson Depo.; Doc. 40-2 at 10, Cranford Depo.;  Doc. 44-1, Photos of Parking Lot.) Le Gro testified that, at the time of her fall, the surface on which she fell was dry and "[t]he sun was shining."  (Doc. 35-2 at 55-56, Le Gro Depo.)  Le Gro testified that her right foot caught under the speed bump, causing her to fall and shatter her elbow.  (*Id.* at 33, 56, Le Gro Depo.)  As a result of her fall, Le Gro underwent surgery for replacement of her right radial head and a plating of her proximal ulna.  (Doc. 38-3 at 6, Dr. Campbell Depo.)  Le Gro also claims that her injury caused her to lose income as a truck driver.  (Doc. 35-2 at 65, Le Gro Depo.)

The record contains the deposition testimony of the following post office employees: Michael Allison, the manager of post office operations (Doc. 43-2 at 8); Willette Davis, the acting safety manager (Doc. 42-1 at 9); Robert Mack, a former supervisor of distribution/operations (Doc. 41-2 at 1); and Greg Wilson, the maintenance manager (Doc. 39-7 at 11).  They each testified that they had no knowledge of any accidents or complaints arising out of the subject speed bump aside from Le Gro's case.  (Doc. 43-7 at 80, Allison Depo.; Doc. 48-1 at 115, Suppl. to Davis Depo.; Doc. 41-4 at 24, Mack Depo.; Doc. 39-11 at 70, Wilson Depo.)[3]  Davis testified that she could not recall ever noticing that this particular speed bump was not bolted tightly to the ground during any of her inspections prior

---

[3] Upon the court's request, plaintiff filed certain pages from Willette Davis's deposition transcript that were missing when the deposition was originally filed on the electronic record. (Doc. 48-1.)

to December 2006.  (Doc. 42-4 at 46-47, Davis Depo.)  When asked in her deposition whether she had any knowledge of any employees of the defendant who had knowledge of any hazard in the area where she fell, Le Gro responded that she "[doesn't] know those people" or what they had seen, but that, "I don't see how they could have overlooked it."  (Doc. 35-2 at 73-74, Le Gro Depo.)  The Postal Service removed the subject speed bump from the premises sometime in late 2006 or in 2007.  (Doc. 39-10 at 48, Wilson Depo.)

Joyce Cranford, Le Gro's former coworker, and Anne Price, Le Gro's friend, inspected the speed bump together within a day of Le Gro's accident.  (Doc. 40-1 at 4, 6-8, Cranford Depo.; Doc. 40-5 at 5, Price Depo.; Doc 40-6 at 10, 15-17, Price Depo.)  They both testified in depositions that you could not tell that the speed bump was not fully secured to the ground without examining the speed bump up close.  (Doc. 40-2 at 9-11, Cranford Depo.; Doc. 40-7 at 20-21, Price Depo.)  Cranford testified, "[Y]ou could tell it [the speed bump] wasn't down to the ground good, but you had to be right up on it to look for it to see it," and that it was raised just enough to poke a couple fingers under it.  (Doc. 40-2 at 10-11, Cranford Depo.)  Price testified that the speed bump was elevated "maybe a little more than an inch" but "was not sticking way up in the air."  (Doc. 40-6 at 15-16, Price Depo.)  Price also testified that "[i]t was obvious when we saw [the speed bump] that it was raised on one end, when you're standing there looking down at it. But, you know, if you're walking towards it, I'm not sure you would have ever seen it." (*Id.* at 20-21.)  According to Price, neither she nor Cranford examined the speed bump by getting down to the ground to look at

it.  (*Id.* at 16-17.)  Neither of them tried to move the speed bump from its place.  (Doc. 40-2 at 10, Cranford Depo.)

The Postal Service was to conduct semi-annual inspections of the premises, which includes the entire outside perimeter.  (Doc. 39-8 at 20, Wilson Depo.; Doc. 39-9 at 29-31, Wilson Depo.)  The building manager is required to regularly walk the grounds and inspect the grounds, approaches, roads and parking areas to ensure that the required level of maintenance is being accomplished and to identify needed repairs.  (Doc. 39-12 at 80, 83-87, Wilson Depo.; Doc. 40-9 at 4, Maintenance Handbook.)  However, no Postal Service employee is required to check the bolts in speed bumps to make sure the speed bumps are firm to the ground.  (Doc. 39-10 at 57-58, Wilson Depo.)

Prior to filing this lawsuit, Le Gro filed an administrative tort claim seeking $962,000 in personal injury damages.  (Doc. 1 at 6-8, Compl., Ex. 1.) Within six months of the denial of her administrative tort claim, Le Gro filed this action under the FTCA seeking an unspecified amount of compensatory and punitive damages.  (Doc. 1 at 10-11, Compl., Ex. 2; Doc. 1 at 4, Compl.)

### III. DISCUSSION

Le Gro brings this action alleging the government breached its duty owed to her by not removing the hazard created by the speed bump and/or by failing to warn of the hazard created by the speed bump.  (Doc. 1 ¶ 16, Compl.)  Le Gro alleges that the breach was negligent and/or wanton.  (*Id.* ¶ 17.)  The government contends that summary judgment is

warranted because Le Gro cannot show that the government breached its duty of care.  (Doc.

34 at 7, Br. Supp. Def.'s Mot. Summ. J.)

"Under the FTCA, the United States is liable for tortious conduct 'in the same manner

and to the same extent as a private individual under like circumstances' after applying the

applicable law in the same jurisdiction."  *Turner ex rel. Turner v. U.S.*, 514 F.3d 1194, 1203

(11th Cir. 2008) (quoting 28 U.S.C. § 2674).  "Congress' chief intent in drafting the FTCA

was simply to provide redress for ordinary torts recognized by state law."  *Id.* (citations

omitted).  Accordingly, the court will apply Alabama law to determine whether defendant

is liable to plaintiff for her injury.

**Negligence Claim**

To prevail on a claim of premises liability based on negligence, plaintiff must

establish the usual elements of a negligence claim: duty, breach of duty, causation, and

damages.  *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002).  In Alabama, premises

liability varies based on the status of the visitor.  *Ex parte Mountain Top Indoor Flea Market,*

*Inc.*, 699 So. 2d 158, 161 (Ala. 1997).  On December 2, 2006, Le Gro was at the post office

for commercial purposes and therefore was an invitee of the post office.  *See id.*  A

storekeeper owes a business invitee a duty "to use  reasonable care and diligence to keep the

premises in a safe condition, or, if the premises are in a dangerous condition, to give

sufficient warning so that, by the use of ordinary care, the danger can be avoided."  *Kmart*

*Corp. v. Bassett*, 769 So. 2d 282, 284-85 (Ala. 2000) (quoting *Armstrong v. Georgia Marble*

8

*Co.*, 575 So. 2d 1051, 1053 (Ala. 1991)).  This duty does not convert a premises owner into

an insurer of its invitees' safety, and "the mere fact that a business invitee is injured does not

create a presumption of negligence on the part of the premises owner." *Id.* at 285.  The

invitor's duty

> is limited to hidden defects which are not known to the invitee
> and would not be discovered by him in the exercise of ordinary
> care. All ordinary risks present are assumed by the invitee, and
> the [invitor] is under no duty to alter the premises so as to
> [alleviate] known and obvious dangers. The [invitor] is not
> liable to an invitee for an injury resulting from a danger that was
> obvious or that should have been observed in the exercise of
> reasonable care. The entire basis of an invitor's liability rests
> upon his superior knowledge of the danger that causes the
> invitee's injuries. If that superior knowledge is lacking, as when
> the danger is obvious, the invitor cannot be held liable.

*Jones Food Co., Inc. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006) (quoting *Sessions*, 842 So.

2d at 651-52).

A condition is "obvious" if the risk is apparent to, and of the type that would be

recognized by, a reasonable person in the position of the invitee.  *Shelton v. Boston*

*Financial, Inc.*, 638 So. 2d 824, 825 (Ala. 1994).  "[O]penness and obviousness, if

established, negate the duty, [and] defeat the claim . . . ."  *Sessions*, 842 So. 2d at 652.  An

argument that a hazard is open and obvious is an affirmative defense on which the defendant

bears the ultimate burden of proof.  *Denmark v. Mercantile Stores Co., Inc.*, 844 So. 2d 1189,

1195 (Ala. 2002).  To satisfy this burden, the defendant must establish that Le Gro was aware

or should have been aware of the condition she alleges to have been dangerous.  *See id.*

Viewed in the light most favorable to Le Gro, the nonmoving party, the evidence shows that as Le Gro was walking across the post office parking lot, she caught her foot in a small gap below a defectively bolted speed bump, causing her to trip and fall.  The government concedes that Le Gro was an invitee and that it owed her a duty of reasonable care, but argues that no duty was breached in this case because the hazard presented by the speed bump was open and obvious.  (Doc. 34 at 7, 16, Br. Supp. Def.'s Mot. Summ. J.)  Le Gro argues that the issue of whether the hazard was open and obvious is inappropriate for summary judgment and is a question of fact precluding judgment as a matter of law for the defendant.  (Doc. 37 at 20, Pla.'s Mem. Opp. to Summ. J.)  Le Gro further argues that whether defendant had actual or constructive notice of the alleged defect is a fact question precluding summary judgment.  (*Id.* at 10-11, 13.)

Because "the analysis of 'slip and fall' cases under Alabama law is fact intensive," the question of the openness and obviousness of a danger is generally not to be resolved on a motion for summary judgment.  *Blizzard v. Food Giant Supermarkets, Inc.*, 196 F. Supp. 2d 1202, 1207 (M.D. Ala. 2002); *Douglas v. Devonshire Apartments, L.L.C.*, 833 So. 2d 72, 75 (Ala. Civ. App. 2002).  Despite this general rule, both the Alabama Supreme Court and the Alabama Court of Civil Appeals have affirmed summary judgments for defendants in trip and fall premises liability cases where the hazardous conditions were found to be open and obvious.  *See In re Schaeffel v. Wal-Mart Stores, Inc.*, 874 So. 2d 493, 497 (Ala. 2003) (danger of total darkness held to be open and obvious, precluding recovery for plaintiff);

10

*Sessions*, 842 So. 2d at 654 (unbarricaded stairwell held to be open and obvious danger, negating defendant's duty to eliminate or warn of hazard); *Sisk v. Heil Co.*, 639 So. 2d 1363, 1365 (Ala. 1994) (gravel speed bumps on road held not to present hidden dangers as an adult of normal intelligence should be aware of the need for caution when navigating them) (overruling on other grounds recognized by *Sessions*, 842 So. 2d at 654); *Douglas*, 833 So. 2d at 75 (hole in parking lot where plaintiff fell held to be open and obvious danger where nothing prevented plaintiff from seeing the hole and she would have seen it by exercising ordinary care); *Browder v. Food Giant, Inc.*, 854 So. 2d 594, 597 (Ala. Civ. App. 2002) (depression that contained drainage pipe in parking lot held to be open and obvious danger that could have been discovered with reasonable care where its color contrasted with that of the parking lot and nothing obstructed plaintiff's view of the depression); *see also Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 745 (Ala. 2009) (reversing jury verdict for plaintiff who fell over unopened boxes of merchandise in a store aisle as the hazardous condition was open and obvious); *Shipman*, 981 So. 2d at 363 (reversing jury verdict for plaintiff and holding that risk posed by plaintiff's use of ladder was open and obvious).

The Alabama Supreme Court has emphasized that the open and obvious inquiry is an objective one: "the question is whether the danger should have been observed, not whether in fact it was consciously appreciated." *Shipman*, 981 So. 2d at 362. Reversing a jury verdict for the plaintiff for injuries sustained in a fall from a ladder on defendant's premises, the *Shipman* court stated, "Even if we conclude that there is no evidence indicating that

Shipman subjectively perceived a risk of injury before his fall, Jones Food owed no common-law duty to Shipman because the attendant risk here [posed by angle of ladder] was open and obvious." *Id.* at 363.  The Alabama Supreme Court has explained:

> [I]n order for a defendant-invitor in a premises-liability case to win a summary judgment or a judgment as a matter of law grounded on the absence of a *duty* on the invitor to eliminate open and obvious hazards or to warn the invitee about them, the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap.

*Sessions*, 842 So. 2d at 653.  The *Sessions* court rejected the argument that "the invitor's duty *before* a mishap is determined by the invitee's subjective state of mind *at the moment* of the mishap."  *Id.* at 654.  Further, even when the landowner should anticipate potential harm resulting from a hazard, Alabama courts do not impose liability on the landowner if the hazard is open and obvious.  *See id.* (citing *Ex parte Gold Kist, Inc.*, 686 So. 2d 260, 261 (Ala. 1996)).

Le Gro's case is distinguishable from cases where courts have found fact issues regarding whether hazards arising from speed bumps and curbs in parking lots are open and obvious.  In those cases, the hazards causing injuries were not visible to the plaintiffs or not avoidable through the use of reasonable care.  *See Ex parte Kraatz*, 775 So. 2d 801 (Ala. 2000); *Harley v. Bruno's Supermarkets, Inc.*, 888 So. 2d 525 (Ala. Civ. App. 2004); *Howard v. Andy's Store for Men*, 757 So. 2d 1208 (Ala. Civ. App. 2000); *Woodward v. Health Care Authority of Huntsville*, 727 So. 2d 814 (Ala. Civ. App. 1998).

In *Ex parte Kraatz*, the Alabama Supreme Court reversed a summary judgment granted in favor of defendant store owner on plaintiff's negligence and wantonness suit where plaintiff tripped on a "ragged" speed bump on defendant's premises at night. 775 So. 2d at 804. The speed bump in *Kraatz* was black, "not painted or marked in any way and was not visible at night from the path Kraatz was walking." *Id.* at 803. The area surrounding the speed bump had no lights and was dimly lit. *Id.* The court found that several fact issues existed which precluded the grant of summary judgment, including the conditions of the area as they appeared in the poor lighting. *Id.* at 804. Nothing warned the store's customers as to the hazardous condition and plaintiff "had no reason to expect or to suspect an obstruction in her path." *Id.* The dim lighting "made the black speed bump appear to be just another flat section of the lot, misleading Kraatz into believing that she could walk on the lot without danger." *Schaeffel*, 874 So. 2d at 496 (discussing *Kraatz*).

Similarly, in *Woodward*, *Howard* and *Harley*, the courts reversed summary judgments in favor of defendants where poor lighting and coloring impeded the plaintiffs' abilities to see a curb before tripping. *Woodward*, 727 So. 2d at 817 (fact issue existed as to visibility of the curb due to poor lighting and matching colors of sidewalk and driveway which "gave the appearance of one flat mass of concrete"); *Harley*, 888 So. 2d at 528 (plaintiff who tripped on curb in partial darkness could see ground but not curb that was painted the same color as the adjacent fire lane); *Howard*, 757 So. 2d at 1212. In *Howard*, the court reversed a grant of summary judgment to defendants on plaintiff's negligence and wantonness claims,

13

noting that, "whether an elevation irregularity in a sidewalk, curb, or threshold constitutes an unreasonably dangerous condition or defect has, so far as we are able to tell, always been held to be an issue of fact when the plaintiff has presented evidence indicating that the irregularity creates a danger." 757 So. 2d at 1211.  The *Howard* plaintiff tripped and fell on a raised concrete porch in front of defendant's store.  *Id.* at 1210.  The plaintiff's view was unobstructed and the accident occurred during daylight hours, but testimony showed that the height difference between the parking lot and sidewalk was not noticeable "because the black asphalt of the parking lot had been splashed up against the vertical edge of the white concrete," minimizing its visibility.  *Id.*

　　None of the factors that caused the *Kraatz, Harley*, *Howard*, or *Woodward* courts to find an issue of fact precluding summary judgment exist in Le Gro's case.  The speed bump in *Kraatz* and the curbs in *Woodward* and *Harley* were found to have blended in with their surroundings due to poor lighting and dark coloring, and no other warning signs existed that would have drawn one's attention to the changes in elevation.  In contrast, it is undisputed in this case that the sun was shining when plaintiff arrived at the post office and that the speed bump was of a yellow color that visibly contrasted with the surrounding black asphalt. (Doc. 39-13 at 107, Wilson Depo.; Doc. 35-2 at 55-56, Le Gro Depo.; Doc. 44-1, Photos of Parking Lot.)  Nothing in the vicinity distracted or impeded Le Gro's ability to see the speed bump or its elevation.  Further, in contrast to *Howard*, Le Gro has not presented evidence that the irregularity in the speed bump created a "danger" that is different from the ordinary

14

danger of tripping that is associated with a visible speed bump.  Therefore, none of the

reasons cited as creating a question of fact in *Ex parte Kraatz*, *Howard*, *Harley*, or

*Woodward* apply here.

Le Gro argues that although she saw the speed bump before she tripped on it, she "did

not know and had no reason to know that [the speed bump] was not firmly attached to the

ground." (Doc. 37 at 22, Pla.'s Mem. Opp. to Summ. J.)  The Alabama Supreme Court has

refused to accept the claim of a plaintiff who had seen speed bumps on the ground prior to

tripping on them but claimed to be ignorant of their danger.  *Sisk*, 639 So. 2d at 1365.  In

*Sisk*, the plaintiff slipped on gravel speed bumps in a parking lot.  *Id.* at 1365.  In affirming

the lower court's grant of summary judgment on plaintiff's negligence claim against the

property owner, the court stated:

> Ms. Sisk admitted that she had already successfully navigated several
> of these bumps before her accident; thus, she was aware of their
> presence. She contends, however, that she was not aware of the danger
> these speed bumps created.  Ms. Sisk is an adult of apparently normal
> intelligence and as such should be aware of the need for caution when
> walking on mud and stepping over a strip of gravel. Speed bumps made
> of gravel and located on a dirt road do not present a hidden danger and,
> therefore, the premises owner has no duty to warn his invitees of their
> presence or of the dangers that may be associated with them.

*Id.* Accordingly, the court affirmed summary judgment for the defendant on plaintiff's

negligence claim.  *Id.*

The courts in *Browder v. Food Giant, Inc.* and *Douglas v. Devonshire Apartments,*

*L.L.C.* also affirmed grants of summary judgment for defendants where hazardous parking

lot conditions causing plaintiffs' injuries could have been avoided with reasonable care.  In *Browder*, the court affirmed a grant of summary judgment for defendant grocery store on plaintiff's negligence claim where plaintiff fell in a hole in defendant's parking lot.  854 So. 2d 594 (Ala. Civ. App. 2002).  The red-dirt depression where plaintiff fell contrasted sharply with the black color of the asphalt.  *Id.* at 596.  The day of the accident was clear and sunny and nothing obstructed plaintiff's view of the depression.  *Id.* at 595.  Plaintiff admitted that she was not paying attention to where she was walking and was not looking in front of her. *Id.* at 596.  The court found that, unlike other cases where plaintiffs survived summary judgment on claims arising out of trip and falls, the *Browder* plaintiffs did not establish "that the hazardous condition was not discoverable through the use of ordinary care" or that for some reason plaintiff's attention would have been "naturally distracted" from using care to navigate the area.  *Id.* at 597.  Similarly, in *Douglas*, the court affirmed summary judgment for defendant invitor where plaintiff invitee's view of defendant's parking lot was unobstructed and nothing prevented plaintiff invitee from seeing the hole before she fell.  833 So. 2d 72, 75 (Ala. Civ. App. 2002).  The court held that the hole "was not a hidden defect that Douglas could not have discovered by exercising reasonable care for her safety."  *Id.*

As in *Sisk*, *Browder* and *Douglas*, the court finds that the speed bump and any hazard caused by its raised height could have been discovered through the use of ordinary care and therefore were open and obvious to Le Gro.  Both Cranford and Price testified that the fact that the speed bump was slightly raised on one end was noticeable once you were close to

it.  This elevation was noticeable from a standing height, as Price testified that neither she or Cranford examined the speed bump by getting down to the ground.  (Doc. 40-6 at 16-17, Price Depo.)  Price testified that "it was obvious" that it was raised "when you're standing there looking down on it."  (Doc. 40-7 at 20-21, Price Depo.)  A reasonable person choosing to walk over a speed bump, itself an open and obvious tripping hazard, should be looking down when walking over it so as not to trip.  Since the elevated condition of the speed bump is visible to someone exercising reasonable care and looking down at the ground, the elevated condition is open and obvious.  The invitor's liability is limited to "hidden defects which are not known to the invitee and *would not be discovered by him in the exercise of ordinary care*."  *Sessions*, 842 So. 2d at 652 (emphasis added).  Even though there is no allegation that Le Gro was distracted or not paying attention to where she was going, no reasonable fact-finder could find that the use of ordinary care could not have prevented Le Gro's accident.

Clearly visible speed bumps in parking lots do not present hidden dangers.  Le Gro, an "adult of apparently normal intelligence," should have been aware that speed bumps cause tripping hazards and should have recognized the need for caution in maneuvering around them.  *Sisk*, 639 So. 2d at 1365.  The fact that the speed bump in Le Gro's case was slightly elevated from the ground on one end does not change the fact that its danger could have been avoided with reasonable care.  Moreover, Le Gro does not allege that the speed bump completely flew from its anchor or that something else completely unexpected occurred when she attempted to step over it.  Rather, she tripped, which is the risk one takes, and of which

17

a reasonable person is aware, when maneuvering around a speed bump.  A speed bump that is not bolted completely flat to the ground and the potential hazards of a higher than normal speed bump are of the type that would be recognized by a reasonable person in the position of the invitee approaching a visible speed bump.  *Boston Financial, Inc.*, 638 So. 2d at 825.

An invitor has a duty only to maintain a reasonably safe premises. *See Dolgencorp, Inc. v. Hall*, 890 So. 2d 98, 100 (Ala. 2003) (citations omitted).  A slight gap underneath a speed bump does not transform an otherwise open and obvious speed bump into a speed bump with an unreasonably dangerous hidden defect.  If Le Gro had been exercising reasonable care, she would not have walked so close to the speed bump or in such a manner that she could have tripped on it, whether or not the speed bump was slightly raised.  A person exercising ordinary, reasonable care, who was aware of the speed bump as Le Gro was, should have perceived the speed bump in its entirety as a tripping hazard and avoided it, gap or no gap.

Le Gro argues that where an injury is caused by a defect in a defendant's premises, the issue of whether the defendant was on notice of the defect should be decided by the trier of fact.  (Doc. 37 at 10-11, 13, Pla.'s Mem. Opp. to Summ. J.)  Le Gro directs the court to *Mims v. Jack's Restaurant*, which reversed a grant of summary judgment for the defendant, finding that a jury question existed as to whether defendant restaurant should have known that the threshold where plaintiff tripped was defective.  565 So. 2d 609, 611 (Ala. 1990).  The *Mims* plaintiff tripped on a metal threshold outside the doorway to the restaurant.  *Id.* at

18

610.  The evidence showed that the threshold was raised about a half inch and that a couple of the screws that were supposed to anchor the threshold to the floor were missing.  *Id.*  The court found that a defect existed and stated, "[W]here the alleged defect is a part of the premises . . . , once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident."  *Id.*

A speed bump is analogous to a door threshold to the extent that it is a fixed part of the premises.  However, the speed bump in this case was an open and obvious danger.  As such, it is irrelevant whether the defendant had notice of the danger. Under Alabama law, a premises owner is not liable for injuries sustained from hazards that are open and obvious, even when the premises owner should anticipate that the hazards could cause harm. *Sessions*, 842 So. 2d at 654.  The court in *Mims* did not discuss whether the hazard was open and obvious.   The *Mims* court stated that fixtures require "ordinary and reasonable maintenance in order to provide safe premises for the store's customers."  565 So. 2d at 611. This court finds that a slightly raised speed bump does not pose an unreasonably safe condition, because the tripping hazard is already obvious.  *See Sisk*, 639 So. 2d at 1365.

The court further finds that defendant did not have superior knowledge that the speed bump was raised on one end.  Employees of the post office testified that they were not aware

19

of any accident or complaints associated with the speed bump.  "If [the invitor's] superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *Shipman*, 981 So. 2d at 362 (citations omitted).  Le Gro and defendant were equally ignorant of any threat posed by the elevated speed bump, but had equal knowledge that the speed bump itself was a tripping hazard which could be avoided with reasonable care.  The court agrees with defendant that "a readily observable, slightly raised speed bump in broad daylight is not a condition such that a legal duty is imposed upon Defendant under Alabama law to warn about or correct."  (Doc. 44 at 3, Def.'s Reply Br. Supp. Mot. Summ. J.)

This case does not involve an invitee tripping over an item in her path that she reasonably should not have expected to be there, such as an obstacle in the middle of an aisle at a retail store or an item protruding from a display rack.  *See Denmark*, 844 So. 2d at 1195 (reversing summary judgment for defendant retail store on negligence claim arising out of plaintiff's tripping over roll of plastic bags where "there was no evidence indicating that [plaintiff] knew the roll existed or that she expected it to be in the area in which she was shopping").  Rather, this case involves a speed bump, an object commonly found in parking lots, that was slightly raised from the ground on one end.  "[A]ppreciation [of a defect] does not require specialized knowledge or a sophisticated thought process when the danger is an everyday obstacle lying on the ground" and visible to the plaintiff.  *Blalock*, 2007 WL 1412445, at *2.

Because the speed bump posed an open and obvious danger, defendant owed Le Gro no duty to eliminate the hazard or to warn her of the hazard. *See Dolgencorp*, 28 So. 3d at 746. Therefore, defendant is entitled to judgment as a matter of law on Le Gro's negligence claim.

**Wantonness Claim**

Le Gro also argues that defendant acted wantonly by not removing the hazard created by the speed bump and/or by failing to warn of the danger presented by the speed bump. (Doc. 1 ¶¶ 16-17, Compl.)  In order to establish wantonness, plaintiff must "prove that the defendant caused harm by the conscious doing of some act or the conscious omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury would likely or probably result." *Kmart Corp. v. Peak*, 757 So. 2d 1138, 1144 (Ala. 1999) (quoting *Alfa Mutual Ins. Co. v. Roush*, 723 So. 2d 1250, 1258 (Ala. 1998)).  Le Gro does not specifically state how she believes defendant acted wantonly aside from failing to correct the hazardous speed bump and failing to warn about it.  Le Gro has presented no evidence that any employees of defendant knew of the defective speed bump.  Defendant's employees testified that they were not aware that the speed bump was not properly bolted, knew of no accidents relating to the speed bump, and had received no complaints about it.  (Doc. 42-4 at 46-47, Davis Depo.; Doc. 43-7 at 80, Allison Depo.; Doc. 48-1 at 115, Suppl. to Davis Depo.; Doc. 41-4 at 24, Mack Depo.; Doc. 39-11 at 70, Wilson

21

Depo.)  Le Gro has offered no evidence that defendant caused harm "while knowing" of the allegedly defective conditions.

The court has already found that the slightly elevated speed bump was an open and obvious condition and that defendant owed Le Gro no duty to eliminate the hazard or to warn her of the hazard.  Because defendant owed no duty to Le Gro to eliminate or warn of the hazard, defendant cannot be found to have acted wantonly by consciously omitting a duty. Accordingly, her wantonness claim fails as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Motion for Summary Judgment, (Doc. 33), is due to be granted with respect to Le Gro's negligence and wantonness claims.   An order granting defendant's Motion will be entered contemporaneously with this opinion.

**DONE**, this 20th day of June, 2011.


SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE